UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LONDI L. LAFLEUR                                CIVIL ACTION

VERSUS

KARLEEN LEGLUE, ET AL.                      NO. 16-CV-00254-BAJ-RLB

## RULING AND ORDER

Before the Court is Defendants' Motion for Summary Judgement (Doc. 102). The Court previously issued an Order granting in part and denying in part Defendants' motion, and scheduled an evidentiary hearing on the issue of whether Plaintiff had exhausted her administrative remedies prior to filing the instant lawsuit. (Doc. 152). Further oral argument is not required. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED** and Plaintiff's claims are **DISMISSED**.

## I. FACTUAL BACKGROUND

On January 25, 2016, Londi Lafleur ("Plaintiff") was booked into the Livingston Parish Detention Center ("LPDC"). (Doc. 1). A verbal altercation between Plaintiff and LPDC officers ensued, which ultimately led to Defendant Karleen Leglue handcuffing Plaintiff and bringing her to the disciplinary lockdown section of the jail. (Doc. 116-5 at p. 1). While Plaintiff was handcuffed, Leglue violently slammed Plaintiff's head into a concrete wall. (Doc. 116-4 at p. 9). The Livingston Parish Sheriff's Office ("LSPO") investigated the incident and terminated Leglue

1

immediately. (Doc. 101-2 at p. 2). Leglue was subsequently arrested and pleaded guilty to simple battery, for which she received a six-month suspended sentence and two years' probation. (Doc. 102-3 at p. 2).

On February 22, 2016, all charges against Plaintiff were dismissed and she was released from custody. (Doc. 1). While Plaintiff was incarcerated, she filed two inmate request forms, one requesting that she be moved to "population"[1] (Doc. 121-5) and the other inquiring into the amount owed for her medical care necessitated by Leglue's attack. (Doc. 166 at p. 7). In neither of the inmate request forms did Plaintiff request a grievance form. Plaintiff subsequently filed suit against the LSPO, Sheriff Jason Ard, Leglue, Atlantic Specialty Insurance Company ("Atlantic"), and Warden Perry Rushing. (Doc. 47). Atlantic filed a Motion for Partial Summary Judgment (Doc. 112) and Sheriff Ard and Warden Rushing filed an additional Motion for Summary Judgment. (Doc. 116). The Court issued a Ruling and Order Granting Atlantic's Motion for Partial Summary Judgement and Granting in part and Denying in part the Motion for Summary Judgement filed by Sheriff Ard and Warden Rushing.

Sheriff Ard argued that Plaintiff never initiated the grievance procedure to recover damages arising from the incident. He also claims that although an officer told Plaintiff she could not press charges while incarcerated, this statement did not mislead her into thinking that she could not file a civil lawsuit while incarcerated. Plaintiff argues that no exhaustion of administrative remedies was necessary because a remedy was unavailable, yet she was stonewalled at every attempt to begin internal

---

[1] The Court assumes that Plaintiff requested to be placed in the general population section of the jail.

complaint procedures, and was told that she could not "press charges," which she took to mean that she could not pursue any civil, criminal, or administrative remedy while in custody.

When a prisoner challenges the lack of access to an administrative remedy, the burden to show that the remedy was available shifts to the defendants. *Cheron v. LCS Corr. Servs., Inc,.* 2002-1049 (La. App. 1 Cir. 2/23/04) 872 So.2d 1094, 1103, aff'd 2004-0703 (La. 1/19/05), 891 So.2d 1250. The Court previously determined that Sheriff Ard had not met the burden set forth in *Cheron* to be entitled to summary judgment. The Court further found that the difference between "pressing charges" and "filing a complaint" is not immediately apparent to those untrained in the law. Therefore, the Court conducted an evidentiary hearing on the discrete issues of whether Plaintiff was required to exhaust all administrative remedies, whether it was possible for Plaintiff to do so, whether employees of the LPDC misled Plaintiff into believing that she could not file any civil actions against Officer Leglue while incarcerated, and whether such alleged misleading statements created an exception to the requirement to first exhaust all administrative remedies.

### A. The Evidentiary Hearing

Sergeant Thomas W. Martin's testified that a grievance only begins when an inmate requests a grievance form, which is subsequently submitted to the warden for review. (Doc. 162 at p. 21). He further testified that, in his opinion, there is a difference between a prisoner complaint and an official grievance form. Sgt. Martin also admitted that there is nothing in the inmate handbook or policy and procedure

guide that instructs officers or inmates on the difference between a complaint and a grievance. (*Id.*). When asked if there were any "magic words" to obtain a grievance form, Sgt. Martin replied that the words "I want a grievance" must be uttered. (*Id.* at p. 47).

Officer Velma Wheat testified that while making her rounds on the day of the assault, Plaintiff approached her with a swollen face, and reported that her face had been smashed the previous night, and was hurting badly. (*Id.* at p. 60). Officer Wheat testified that Plaintiff did not say anything to her about wanting to begin the grievance process. (*Id.* at p. 62). On cross examination, Officer Wheat stated that to receive a grievance form, an inmate must first ask for an inmate request form. (*Id.* at p. 68) Upon requesting a grievance form via the inmate request form, the inmate will be given the grievance form. (*Id.*).

Dpy. Johnathan Crozier testified that he interpreted Plaintiff's statement that she wanted to "press charges" as an indication that she wanted criminal charges to be filed against Leglue. (Doc 163. at p. 10). Dpy. Crozier testified it was his understanding that there are differences between pressing charges and initiating a grievance process. (*Id.*). He testified that Plaintiff did not say anything to him about wanting to start the grievance process. (*Id.* at pp. 10-11).

Dpy. Corzier also testified that prior to receiving a grievance form, an inmate must request the grievance form by using an inmate request form. (*Id.* at p. 24). However Dpy. Corzier admitted that this procedure is not specifically set forth in the inmate handbook. (*Id.* at p. 26).

4

Warden Rushing, former warden of the Livingston Parish Prison testified that an inmate must fill out an "ARP"[2] or a grievance form to initiate the grievance procedures. (*Id.* at p. 43). He testified that Plaintiff refused to take the inmate handbook when it was offered to her, and that it was his understanding that "pressing charges" is different that requesting a grievance. (*Id.* at pp. 47, 49). Warden Rushing also testified that a supervisor could simply choose to give the grievance form to the prisoner directly, and that the decision to do so is strictly at the supervisor's discretion. (*Id.* at p. 60). Warden Rushing also stated that there is no specific training that dictates when an officer should use his discretion to bypass the inmate request form and to simply provide the grievance form at the first request. (*Id.* at pp. 60-61).

Deputy Savannah Duval Foil testified that if an inmate doesn't say "I want to file a grievance" or "I want to file an ARP" no grievance form will be given to them. (*Id.* at p. 92).

Plaintiff testified that after being assaulted, she was moved into solitary confinement, where she met Warden Rushing for the first time. (*Id.* at p. 102). Plaintiff testified that she told Warden Rushing that she wanted to press charges, to which Warden Rushing responded that "they had it under control." (*Id.*). Plaintiff also testified that she specifically asked Dpy. Wheat, Warden Rushing, and three other unnamed individuals employed at the jail how to have Livingston Parish pay for the costs of her medical care resulting from the assault. (*Id.* at p. 103). Plaintiff

---

[2] Administrative Remedy Procedure.

testified that nobody told her about the grievance form during those conversations. (*Id.* at p. 104). Plaintiff affirmed that she never specifically asked for a grievance form, or initiate an ARP while she was incarcerated. (*Id.*).

## II. LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether the movant is entitled to summary judgment, the Court views the facts in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

After a motion for summary judgment is filed, the non-movant "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal citations omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Austin v. Kroger Tex., L.P.*, 846 F.3d 326, 328 (5th Cir. 2017) (quoting *Gates*, 537 F.3d at 417).

On the other hand, the non-movant's burden is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal quotations omitted). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the

6

existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, summary judgment will lie only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Sherman v. Hallbauer*, 455 F.2d 1236, 1241 (5th Cir. 1972).

## III. DISCUSSION

Defendants cite *Dickens v. La. Corr. Inst. For Women*, 11-0176 (La. App. 1 Cir. 9/14/11), in which the Louisiana First Circuit Court of Appeal found that three letters written by an inmate to prison officials complaining of the subject incident were not sufficient to have initiated the grievance process because such letters did not contain the phrase "this is a request for administrative remedy." (*Id.* at p. 5). Defendants argue that if such letters to the prison were deemed insufficient to initiate the grievance process, Plaintiff's mere verbal requests to officers fall far below that standard. (*Id.*). Defendants also cite *Gonzales-Liranza v. Naranjo* 76 F. App'x 270, 272 (10th Cir. 2003), in which the United States Court of Appeals for the Tenth Circuit found that an inmate, after expressing that he wished to file a complaint and being told that his complaint would be investigated, failed to exhaust his administrative remedies by not also filing out the prison's complaint form, as required by the PLRA.

Defendants also assert that Plaintiff's failure to initiate the grievance process within 90 days of the incident necessarily resulted in her claims being deemed

7

abandoned under La. R.S. § 15:1172(C).[3] Plaintiff was released from Livingston Parish Detention Center 29 days after the incident, and was represented by counsel within 90 days of the incident. (*Id.*). Defendants claim that Plaintiff had ample time to file the grievance procedure, but failed to do so within the statutorily required timeframe.

Despite the ambiguity regarding the process to request a grievance form, and despite the failure of the officers to reasonably interpret Plaintiff's complaints, the grievance procedures at the LPDC are not "an unnavigable quagmire that makes it impossible for an inmate to effectively exhaust his remedies." *Abbot v. Babin*, 15-339, 2016 WL 3951625 (M.D. La. July 21, 2016). Likewise, LPDC's administrative scheme is not "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859.

Although Plaintiff claims that she believed her grievance procedures had been initiated, based on her conversation with several of the officers at LPDC, her beliefs are misplaced. Despite the ambiguities concerning the method by which an inmate may receive a grievance form, the inmate handbook and the policy and procedures handbook unambiguously require that grievance procedures be initiated in writing.

---

[3] "If an offender fails to timely initiate or pursue administrative remedies within the deadlines established in Subsection B of this Section, any such claim is abandoned, and any subsequent suit asserting such a claim shall be dismissed with prejudice. If at the time the petition is filed the administrative remedy process is ongoing but has not yet been completed, the suit shall be dismissed without prejudice." La. Stat. Ann. § 15:1172(C).

Subsection B Provides: An offender shall initiate his administrative remedies for a delictual action for injury or damages within ninety days from the day the injury or damage is sustained. La. Stat. Ann. § 15:1172(B)

Once an impediment to an administrative remedy which renders it unavailable is removed, such remedies are considered to be available again. *Dillon v. Rogers*, 596 F.3d 260, 267-268 (5th Cir. 2010). Plaintiff had a reasonable opportunity to file a grievance, yet she failed to do so. Plaintiff never returned to LPDC to file a grievance, never mailed a grievance form to prison officials, and never requested that a grievance form be made available to her at any time during the period in which she could file the grievance via the inmate request form.

Finally, according to La. R.S. § 15:1172(C), Plaintiff was required to bring her claim within 90 days of the incident. The incident occurred on January 25, 2016. Plaintiff was required to file a grievance by April 24, 2016. Plaintiff filed her civil complaint on April 20, 2016. While there may be some debate concerning whether the prison's policy of required grievances to be filed within 30 days of the alleged incident, such inquiries are irrelevant to the motion *sub judice*. No grievance was filed within the statutory time period or within the period set forth by LPDC. The Court finds that Plaintiff did not exhaust her administrative remedies. Because Defendants have met the burden to show that administrative remedies were available to Plaintiff, but not exhausted as set forth in *Cheron*, summary judgement is **GRANTED**.

IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' request for summary judgment on the ground that Plaintiff failed to exhaust her administrative remedies is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED as MOOT**.

Baton Rouge, Louisiana, this 31st day of July, 2019.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**